## HERTZMARK v. LYNCH.*
### No. 2574.

Circuit Court of Appeals, First Circuit.
Nov. 28, 1931.

Benjamin F. Evarts, of Holyoke, Mass., for appellant.

Joseph B. Jacobs, of Boston, Mass. (Frank J. McKay, of Holyoke, Mass., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court affirming the findings of a referee in bankruptcy and his order setting aside a mortgage given by a bankrupt to the appellant.

The Firestone Shoe Company was declared a bankrupt December 17th, 1924, on an involuntary petition filed December 3d. Prior to March, 1923, the appellant was apparently a prosperous shoe dealer in the city of Holyoke, Mass. On March 23d of that year, together with his son, Samuel Hertzmark, and his son-in-law, Solomon J. Firestone, he organized a corporation, and turned over his business to the corporation, with the end in view of having the son and son-in-law participate in, if not to take over, its management, and also, no doubt, of relieving himself of further financial responsibility. He served as treasurer of the corporation for about a year afterward.

In February, 1924, the corporation, to enable the new management to open another shoe store in Troy, N. Y., borrowed $3,000 of the Holyoke National Bank, and gave the corporate note indorsed by Samuel A. Hertzmark. Some time between February, 1924, and June, 1924, the appellant withdrew from the corporation, and transferred his stock to his son, son-in-law, and daughter. When the note to the bank came due in June, a payment was made of $500, but the bank, on learning that the appellant had transferred his interest in the business, at first refused to renew the note without the indorsement of the appellant. The bank, however, finally renewed the note for four months, with an indorsement by the son-in-law, upon the understanding that it would be paid when due.

When the note at the bank came due in October, 1924, the corporation owed the appellant for money loaned without security the previous June the sum of $1,220, and also owed another son of the appellant, Joseph Hertzmark, $2,030 for merchandise, and, in addition, owed other creditors, the names of whom and the amounts of their claims do not appear in the record, except as may be inferred from the fact that in December following its liabilities were as hereinafter stated.

Some time before the note became due, the corporation being unable to meet it, and the bank unwilling to renew it, the son-in-law who had indorsed the note asked the appellant for a further loan of $5,000. On October 10, 1924, the appellant advanced the corporation $4,500 and took a mortgage on all the stock and fixtures in the Holyoke store, and also a mortgage on the stock and fixtures in the Troy store, to secure a note in the principal sum of $6,250. It is agreed that the corporation at the time was insolvent, and in December, on the date of the petition in bankruptcy, owed over $28,000, and its only assets, as far as the record shows, were its stock and fixtures, which were wholly insufficient to meet its liabilities. Following the adjudication in bankruptcy, the appellant filed a petition with the referee to declare the mortgages valid and order them paid from funds in the hands of the trustee received from the sale of the stock and fixtures.

The referee, after a hearing, found as a fact that the appellant must have known of the insolvent condition of the corporation at the time the mortgages were taken, and held that the mortgages not only constituted a preference as to the appellant, but that the loan was also knowingly given to enable the bankrupt to prefer the bank, the son-in-law, and the son Joseph. It now

appears that the mortgage on the stock and fixtures in the store in Troy was not valid under the laws of New York for failure to give notice to the creditors. Bentley v. Young (D. C.) 210 F. 202.

■■ We think there was sufficient evidence to warrant the findings and rulings of the referee. It is conceded by the appellant that, as to the amount due him on account of his loan in June, 1924, the mortgages constituted a preference, and to that extent are unenforceable; but he claims the giving of the mortgages to the appellant was not a preference as to the bank, or Joseph Hertzmark, and should be held valid as to the new loan of $4,500. The referee, however, declared the mortgage invalid, not because it constituted a preference as to the bank, the son-in-law, and Joseph Hertzmark, but because it was tainted with the intent of the mortgagee that the bankrupt should give such preferences, or, in other words, the new loan was made to enable the bankrupt to do so. Again, as the court said in Dean v. Davis, 242 U. S. 438, 444, 37 S. Ct. 130, 131, 61 L. Ed. 419: "A transfer, the intent (or obviously necessary effect) of which is to deprive creditors of the benefit sought to be secured by the Bankruptcy Act, 'hinders, delays or defrauds creditors' within the meaning of § 67e [11 USCA § 107 (e)]"; and this court will not disturb the District Court's decision affirming the order of the referee if the mortgages appear to be invalid on any ground. Dean v. Davis (C. C. A.) 212 F. 88.

■ The officers of the corporation must be held to have intended the obvious consequences of their act; and, knowing its insolvent condition, to pay the bank, thus relieving the son-in-law of his liability as an indorser, Smith v. Coury (D. C.) 247 F. 168, 172; Chapman v. Hunt (D. C.) 248 F. 160, and to pay the other brother the sum due him for merchandise, and to secure to the father his previous loan, clearly constituted preferences; and a mortgage or mortgages of all its assets within four months of a petition being filed in bankruptcy, to secure the money to pay these obligations, would obviously hinder and delay its other creditors by depriving them of the benefit of the Bankruptcy Act. Under section 67e (11 USCA § 107 (e), the burden is on the mortgagee to show that in such a transaction he acted in good faith. Bentley v. Young (D. C.) 210 F. 202, affirmed (C. C. A.) 223 F. 536; Crawford v. Broussard (C. C. A.) 260 F. 122, 130;

In re Movette Camera Corp. (D. C.) 279 F. 174, affirmed (C. C. A.) 279 F. 1020; Parker v. Sherman (C. C. A.) 212 F. 917, 919.

Although the appellant denied that he knew anything about the financial condition of the company at the time of making the loan in October, it appeared that, after he withdrew from the corporation, he still kept a desk in the Holyoke store for the transaction of his personal affairs. He must have known the nature and extent of the stock and fixtures on hand, at least in the Holyoke store, and, from his long experience in the business, approximately its value; and, from his knowledge gained of the corporate affairs when he was treasurer and his close relation with the officers of the company, he must also have known that it had no other assets than the stock and fixtures. He admitted that he withdrew from the corporation a few months before because he did not like the way things were going. He sold his stock to a son, son-in-law, and daughter for $700, although it cost him $4,500, but admitted that he had never received his pay. He had refused to indorse the note to the bank in June, and at the time of taking the mortgage in October knew the company could not meet the note, and that the bank had threatened to bring suit and close up the store; he also knew that the corporation had not paid his other son for merchandise which he had sold the corporation as a cash transaction, and that it had not paid anything on account of his loan made in the previous June, although he had frequently demanded it. Surely here were sufficient facts to put him on inquiry when the officers of the corporation came to him to borrow $5,000 more, because the company could not meet its obligations. Walbrün v. Babbitt, 16 Wall. 577, 21 L. Ed. 489; In re Sutherland Co. (D. C.) 245 F. 663, 665. Reasonable investigation on the part of the appellant would then have disclosed that the shoe company was insolvent and the extent of its liabilities, if he did not already know it, that the mortgages would not only constitute a preference as to him, at least to the extent of his previous indebtedness, but the proposed disposition of the loan would also result in preferences as to the bank, his son-in-law, and his son Joseph, and the mortgages of all the assets would of necessity hinder and delay the other creditors of the corporation, and would undoubtedly, sooner or later, result in the corporation being adjudged a bankrupt.

It is common knowledge that a retail

shopkeeper usually mortgages his stock in trade and fixtures only as a last resort, and that the immediate effect of doing so is to destroy all further credit, and eventually under the conditions disclosed here would result in bankruptcy. It was futile for this appellant, as a man of wide business experience, to deny any knowledge that such was the usual effect of such a mortgage.

If, as the referee found, the appellant was cognizant of the insolvent condition of the corporation at the time he made the loan and took the mortgages, or knew of facts sufficient to put a reasonable man on inquiry, in which case he was bound by what an inquiry would have disclosed and knowing the purpose to which the bankrupt proposed to put the new loan he was advancing, he became a party to the intent, actual or presumptive, to give the preferences and delay and defraud the other creditors of the corporation. "In cases where the direct issue of fraud is involved, knowledge may be imputed where one wilfully closes his eyes to information within his reach." Wecker v. National Enameling &

Stamping Co., 204 U. S. 176, 185, 27 S. Ct. 184, 188, 51 L. Ed. 430, 9 Ann. Cas. 757. Under the circumstances disclosed by the record, the mortgages, under section 67e of the act (11 USCA § 107 (e), were clearly fraudulent as to the other creditors of the bankrupt, who were thereby deprived of the benefits of the act. Dean v. Davis (C. C. A.) 212 F. 88; Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419; Marsh v. Walters (C. C. A.) 220 F. 805; Lumpkin v. Foley (C. C. A.) 204 F. 372.

The referee saw and heard the witnesses. We think it cannot be said that the District Court was clearly wrong in affirming his findings and order. Lumpkin v. Foley, supra (C. C. A.) 204 F. 372, pages 377, 378; Johnson v. Dismukes (C. C. A.) 204 F. 382; Houchin Sales Co. v. Angert (C. C. A.) 11 F.(2d) 115. A mortgagee with actual or imputed knowledge of such facts as the referee found can take nothing under such mortgages as against a trustee in bankruptcy. Seligman v. Gray (C. C. A.) 227 F. 417, 418.

The decision of the District Court is affirmed, with costs.